Jack Silver, Esq. SB #160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy. No. #407
Sebastopol, CA 95472-2808
Telephone (707) 528-8175
Email: jsilverenvironmental@gmail.com

David J. Weinsoff, Esq. SB #141372
LAW OFFICE OF DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Telephone (415) 460-9760
Email: david@weinsofflaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit corporation, | Case No.: 8:20-cv-01702 |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF** |
| v. | |
| COSTA MESA SANITARY DISTRICT, | (Environmental - Clean Water Act 33 U.S.C. § 1251 *et seq.*) |
| Defendant. | |
| _____/ | |

Plaintiff CALIFORNIA RIVER WATCH, an Internal Revenue Code § 501(c)(3), non-profit, public benefit corporation, ("RIVER WATCH") hereby brings this civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*

## I.     INTRODUCTION

1.     This action is a citizens' suit for injunctive relief, civil penalties, and remediation brought against Defendant COSTA MESA SANITARY DISTRICT ("COSTA MESA") for routinely violating "an effluent standard or limitation Under this Act" by discharging

1

a pollutant from a point source to a water of the United States without complying with any other sections of the Act including CWA § 402, 33 U.S.C. § 1342.

2.     On or about May 6, 2020, RIVER WATCH provided notice of COSTA MESA's violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board"), and (4) COSTA MESA as required by the CWA 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations ("Notice") is attached as **EXHIBIT A** and incorporated by reference. COSTA MESA, the State Board, the Regional and National Administrators of EPA all received this Notice.

3.     More than sixty days have passed since RIVER WATCH's Notice was served on COSTA MESA, the State Board, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

**II.     JURISDICTION and VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

5.     Venue is proper because COSTA MESA and its discharging collection system are located, and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1),(2). Venue is also proper because COSTA MESA's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

Complaint

### III. PARTIES

6.      RIVER WATCH is, and at all times relevant to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and mailing address of 290 S. Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are adversely affected by COSTA MESA's discharges and violations of the CWA as alleged herein. Said members use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members.  COSTA MESA's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER WATCH's members.

7.      RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant COSTA MESA is now, and at all times relevant to this Complaint was, a "special district" formed under the laws of the State of California, with administrative offices located at 290 Paularino Avenue, Costa Mesa, California.

### IV. FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

8.      RIVER WATCH incorporates by reference all the foregoing including **EXHIBIT A** as though the same were separately set forth herein.  RIVER WATCH takes this action to ensure compliance with the CWA, which regulates the discharge of pollutants into navigable waters.  The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception

authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA.

9.      The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* CWA § 402(b), 33 U.S.C. § 1342(b)).   In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits.   The entity responsible for issuing NPDES permits and otherwise regulating COSTA MESA's operations in the region at issue in this Complaint is the Regional Water Quality Control Board, Santa Ana Region ("RWQCB").

10.     While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of permitting requirements under the statute relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365).   RIVER WATCH is exercising such citizen enforcement to enforce compliance by COSTA MESA with the CWA.

11.     RIVER WATCH has identified discharges of sewage from COSTA MESA's sewage collection system to waters of the United States in violation of CWA § 301(a), 33 U.S.C. 1311(a), which states in relevant part, "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

Complaint

12.    RIVER WATCH contends that for the period May 1, 2015 to the present, COSTA MESA has violated the Act as described herein.  RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future:

A.    <u>Sanitary Sewer Overflows, Inadequate Reporting, and Failure to Mitigate Impacts</u>

    i.    <u>Collection system subsurface discharges caused by sanitary sewer overflows.</u>

Sanitary sewer overflows ("SSOs"), in which untreated sewage is discharged above-ground from the sewage collection system, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports, and on the dates when no reports were filed by COSTA MESA, all in violation of the CWA.

COSTA MESA's aging sewage collection system has historically experienced high inflow and infiltration ("I/I") during wet weather.  Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains connected to adjacent surface waters including the Paularino Channel, Newport Beach, Upper Newport Bay and the Pacific Ocean.

A review of the CIWQS Spill Public Report - Summary Page identifies the "Total Number of SSO locations as **57** with **144,600** "Total Vol. of SSOs (gal)" discharged into the environment.  Of this total volume, COSTA MESA admits at least **98,500** gallons, or **68%** of the total, reached a surface water.  This discharge poses both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

Examples of the alleged violations included in the list of CIWQS-reported SSOs are:

- September 6, 2019 (Event ID# 861082), a spill of 1,500 gallons caused by "debris-rags" occurred at "1555 Mesa Verde Drive East at Golf Course Drive."  Of the total amount, 100 gallons were recovered and 1,400 gallons reached a surface water which according to COSTA MESA is "NA."

- August 6, 2019 (Event ID#860348), a spill of 769 gallons occurred at "1090 S. Bristol Street, Costa Mesa, in front of Caltrans Maintenance yard" due to debris from a broken sewer lateral. Of the total volume, only 499 gallons were recovered allowing 270 gallons to enter Upper Newport Bay.

- December 13-16, 2016 (Event ID# 850174), a sewage spill caused by an "Air Relief Valve (ARV)/Blow-Off Valve (BOV) Failure" occurred at the "Elden Force Main Air Release Line." (Coordinates: 336652457-117.8942558). The total spill volume was estimated at 25,639 gallons. Of this amount, both the amount recovered and the amount reaching land was reported as 18,000 gallons. Of the total amount, 7,639 gallons were reported as having reached Newport Beach via Upper Newport Bay.

All of the above-identified discharges, including Event ID#s 867122 (150 gallons), #861343 (1,750 gallons), #861063 (67 gallons) during the past five (5) years, are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

    ii.    <u>Inadequate Reporting of Discharges</u>

    a.    <u>Incomplete and Inaccurate SSO Reporting</u>

Full and complete reporting of SSOs is essential to gauging their impacts upon public health and the environment. COSTA MESA's SSO Reports, which should reveal critical details about each of these SSOs, lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, RIVER WATCH alleges many of the SSOs reported by COSTA MESA as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. RIVER WATCH alleges that a careful reading of the time when the SSO began, the time COSTA MESA received notification of the SSO, the time of its response, and the time at which the SSO ended, too often appear as unlikely estimations

Examples of the alleged violations included in the list of CIWQS-reported SSOs are:

1

2

3

4

5

6

7

8

9

10

11

- September 17-18, 2019 (Event ID #861343) – the spill start time is reported as 9:30 pm and the agency notification time just 8 minutes later at 9:38 pm. The operator arrival time is reported as 10:55 pm, and the spill end time is reported as the following day at 12:40 pm. The estimated total volume of spill is reported as 2,250 gallons, 500 gallons of which is reported as having been recovered and 1,750 reaching the Paularino Flood Control Channel.

- September 05, 2019 (Event ID #861063) – the spill start time, agency notification, operator arrival, and spill end time are all reported as occurring within 15 minutes of each other. The estimated spill start time is reported to have begun at 2:00 pm, the agency notification at 2:15pm and the operator arrival at 2:45pm. The estimated total volume of spill is 80 gallons, 67 gallons of which are reported as having reached a surface water, identified by COSTA MESA as "NA."

- December 13, 2018 (Event ID #854962) – the estimated spill start time is reported as 11:00 am, agency notification time as 11:55 am, operator arrival time as 12:22 pm, and the spill end time as 12:50 pm.  The total estimated volume of the spill was reported as 2,750 gallons. COSTA MESA reports all 2,750 gallons as both being recovered and having reached land.

12   Given the unlikely accuracy of the times and intervals provided in these reports,

13  it is difficult to consider the stated volumes as accurate.  Without correctly reporting the

14  spill start time and end time, there is a danger that the duration and volume of a spill will

15  be understated.

16          b.    Failure to Warn

17          RIVER WATCH alleges COSTA MESA is understating the significance of the

18  impacts of its CWA violations by failing to post health warning signs for numerous

19  discharges reaching a surface water.  For example, for Event ID #861063, #861082, and

20  #861343, COSTA MESA's response to question "35 - Visual inspection results from

21  impacted receiving water," is "no impact" or "could not identify the wastewater."

22          iii.   Failure to Mitigate

23          RIVER WATCH alleges COSTA MESA fails to adequately mitigate the impacts

24  of its SSOs.  COSTA MESA is subject to the requirements of the "*Statewide General*

25  *Requirements for Sanitary Sewer Systems, Waste Discharge Requirements* Order No.

26  2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer

27  systems.  The Statewide WDR requires COSTA MESA to take all feasible steps and

28  perform necessary remedial actions following the occurrence of an SSO, including

7

limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible.  Further remedial actions including intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the sewage collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and the impact of the release.  As COSTA MESA is underestimating SSOs which reach surface waters, RIVER WATCH alleges COSTA MESA is not conducting sampling on most SSOs.

The EPA's "*Report to Congress on the Impacts of and Control of CSOs and SSOs*" (EPA, Office of Water (2004)) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. There is no record of COSTA MESA performing any analysis of the impact of SSOs on aquatic or wildlife habitat, nor any evaluation of the measures needed to restore water bodies designated as habitat from the impacts of SSOs.

B.    Collection System Subsurface Discharges Caused by Underground Exfiltration

It is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a collection system result in discharges to adjacent surface waters via underground hydrological connections.  RIVER WATCH contends untreated sewage is discharged from cracks, displaced joints eroded segments, etc., in COSTA MESA's sewage collection system into groundwater hydrologically connected to surface waters including, but not limited to, the Paularino Channel, Newport Beach, Upper Newport Bay and the Pacific Ocean. Surface waters then become contaminated with pollutants including human pathogens. Chronic failures in the sewage collection system pose a substantial threat to public health.

Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other collection systems have verified the contamination of the adjacent waters with untreated sewage.   Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well

Complaint

as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. RIVER WATCH alleges that any exfiltration found from COSTA MESA's sewage collection system which reaches a surface water is a discharge of a pollutant to a surface water without an NPDES permit, and therefore a violation of the CWA.

C.    Impacts to Beneficial Uses

The Upper Newport Bay and the Pacific Ocean have many beneficial uses as defined in the RWQCB's Basin Plan. RIVER WATCH alleges that SSOs reaching these waters or their tributaries cause prohibited pollution by unreasonably affecting these beneficial uses.

Newport Bay is located on the southern coast of California, approximately 40 miles south of Los Angeles, extending approximately 3.5 miles north-northeast from the harbor entrance at Corona del Mar. Newport Bay is a combination of 2 distinct units, termed "Lower Bay" and "Upper Newport Bay," divided by the narrows at Pacific Coast Highway Bridge. The 752-acre Lower Bay, where the majority of commerce and recreational boating exists, is heavily developed and is a deep-basin coastal lagoon. The 1,000-acre Upper Newport Bay is a drowned river valley, geologically much older than the Lower Bay, largely undeveloped, and more formally considered to be an estuary. Much of Upper Newport Bay is included in the Upper Newport Bay Ecological Reserve.

Upper Newport Bay is one of the largest coastal wetlands remaining in southern California. Natural habitats within it include open marine waters, intertidal mudflats, cordgrass-dominated low salt marsh, pickleweed-dominated mid salt marsh, high salt marsh, salt panne, riparian, freshwater marsh and upland. Because of its diversity of habitats and location on the Pacific Flyway, Upper Newport Bay supports an impressive number and diversity of birds, particularly during fall and winter when shorebirds and waterfowl arrive from their northern breeding grounds. Upper Newport Bay also supports several endangered bird species including the Light-Footed Clapper Rail, Brown Pelican, Belding's Savannah Sparrow, Black Rail, Peregrine Falcon and

California Least Tern, as well as one endangered plant species - Saltmarsh Bird's Beak. The subtidal and intertidal waters provide important habitat for marine and estuarine fishes.

River Watch is extremely concerned regarding the effects of surface, underground, and unreported SSOs on critical habitat in and around the diverse and sensitive ecosystems of Upper Newport Bay and the Pacific Ocean, including risks to the health of those who recreate in, and consume fish from, those ecosystems.

13.    The location or locations of the various violations are identified in records created and/or maintained by or for COSTA MESA which relate to its sewage collection system as further described in this Complaint.

14.    COSTA MESA is a special district formed in 1944 and governed by an independent 5-member Board of Directors elected by the residents.  COSTA MESA provides wastewater service and solid waste collection. COSTA MESA's boundaries include the entire City of Costa Mesa and portions of the City of Newport Beach and the unincorporated territory of the County of Orange.

15.    COSTA MESA serves a residential population of approximately 116,700 as well as various public, commercial, industrial and retail land uses. COSTA MESA's facilities include 219.4 miles of gravity mainline, 4.8 miles of pressurized mainline, 108.8 miles of private property sewer lateral pipelines, 24,870 service lateral connections, 4,707 manholes and 20 pumping stations.

**V.    STATUTORY AND REGULATORY BACKGROUND**

16.    CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control

Complaint

Board. Sewage is specifically identified in the CWA as a pollutant.  The sewer lines and storm water system owned by COSTA MESA are point sources under the CWA.

17.     The affected waterways detailed in this Complaint and in the Notice are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

18.     The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

19.     COSTA MESA is in possession of no NPDES Permit authorizing it to discharge pollutants (untreated sewage) from its collection system into navigable waters of the United States within the meaning of the CWA.

**VI.    VIOLATIONS**

20.     COSTA MESA's unpermitted discharges of untreated sewage from its sewage collection system, as detailed herein and in the Notice are violations of CWA § 301(a), 33 U.S.C. § 1311(a). The violations are established in RWQCB files for COSTA MESA's sewage collection system as well as in studies conducted by COSTA MESA in compliance with orders from regulatory agencies.

21.     The enumerated violations are detailed in the Notice, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

**VII.   CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A) - Violation of an effluent standard or limitation under the Act - Discharges of a Pollutant From a Point Source to Navigable Waters of the United States not in Compliance with the Act.**

22.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 21, including **EXHIBIT A**, as though fully set forth herein.

23.     COSTA MESA  has violated and continues to violate the CWA as evidenced by the discharges of pollutants (untreated sewage) from a point source (the sewer lines and

Complaint

storm water sewage collection system) to waters of the United States in violation of CWA § 301(a), 33 U.S.C. § 1311(a).

24.    COSTA MESA has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in CIWQS and its own records.  As listed in CIWQS, the Event ID number of those violations are identified herein.

25.    All discharges identified herein are ongoing violations of CWA § 301(a), 33 U.S.C. 1311(a) in that they are discharges of a pollutant (untreated sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.  The ongoing nature of these violations can be found in COSTA MESA's CIWQS submittals and its own records. COSTA MESA's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy.  The relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members of RIVER WATCH.

## VIII.  RELIEF REQUESTED

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

26.    Declare COSTA MESA to have violated and to be in violation of the CWA.

27.    Issue an injunction ordering COSTA MESA to immediately operate its sewage collection system in compliance with the CWA.

28.    Order COSTA MESA to perform the following remedial measures:

a.     Sewer Collection System Repair - Within six (6) months after discovering a Significantly Defective (as determined by Pipeline Assessment Certification Program ("PACP") or similar rating) sewer line or section in the Collection System located within two hundred (200) feet of a surface water, repair any defect that, in COSTA MESA's professional judgment, may pose a risk to human health or the environment.  COSTA MESA's decision to repair, or not to repair, a Significantly Defective line or section shall be both documented and publicly available on COSTA MESA's website.

b.      Sewer System Overflow ("SSO") Response

i.   COSTA MESA will respond to all SSOs on a Risk Basis, regardless of the size or location of the SSO.   High risk areas shall include, but not be limited to: 1) the proximity of the SSO to sensitive populations, specifically schools, parks and recreational areas, as well as high density commercial and residential locales, 2) discharges to surface waters, especially during the recreational season from May to September, and 3) any other location which poses an imminent and substantial endangerment to public health or the environment.   COSTA MESA agrees to undertake staff training in order that staff can respond to all SSOs on a Risk Basis.

ii.      COSTA MESA, in accordance with Section D.7 of the Statewide WDR, shall conduct water quality sampling and testing on all SSOs which, in the professional judgment of COSTA MESA, may pose a risk to public health or the environment. COSTA MESA's decision as to whether to conduct water quality sampling and testing of an SSO shall be both documented and made publicly available on COSTA MESA's website.

iii.      In the event COSTA MESA cannot confirm that specific pathogens have been removed or mitigated from the SSO site, COSTA MESA shall post and maintain appropriate public notification signs and place barricades to keep vehicle and pedestrian traffic away from contact with spilled sewage.

c.      Chemical Root Control Procedures - COSTA MESA shall eliminate the use of Chemical Root Control in its Collection System, or in the alternative:

i.      COSTA MESA shall develop methods for safe and effective Chemical Root Control.

ii.      COSTA MESA shall use Chemical Root Control with the use of chemicals approved by and/or recommended by the federal Environmental Protection Agency or the Regional Water Quality Control Board, Santa Ana Region.

Complaint

iii.     Chemicals utilized for Chemical Root Control shall maintain a half-life of sixty (60) days or less and consist of breakdown products which are non-toxic to aquatic plants or animals.

iv.     All contractors providing Chemical Root Control to COSTA MESA shall be instructed that application of chemicals shall comply with both the recommendations of the manufacturer of the chemical and as required by Cal-OSHA, and shall be required to submit record-keeping including the sections of the Collection System receiving treatment, a map identifying the location(s) where treatment occurs, the chemical(s) applied, amounts applied, and MSDS Sheets.

v.     COSTA MESA shall monitor areas where Chemical Root Control has been utilized for vegetation die-off in a pattern suggesting chemicals have escaped from the Collection System and caused plant mortality. If such vegetation die-off is observed, COSTA MESA will take action to avoid recurrence.

d.     Infectious Vector Protocols - COSTA MESA shall develop protocols to protect its employees and the public from any infectious vector to which those persons might be exposed through direct or indirect contact with sewage. Such protocols may include sealing manholes, eliminating aerosolization, and comprehensive sanitization of sewage that has the potential to expose COSTA MESA's employees or the public to an infectious vector.

e.     Updating of Sewer System Management Plan - COSTA MESA shall update its current Sewer System Management Plan and Overflow Emergency Response Plan to include all the remedial terms imposed by the Court. COSTA MESA's Sewer System Management Plan shall be kept current and properly certified. All documents relating to the certification shall be posted on COSTA MESA's website.

f.     Fund a Supplemental Environmental Project ("SEP") to determine the source of human markers in the Santa Ana River adjacent to the City of Costa Mesa.

29.     Order COSTA MESA to pay civil penalties per violation per day for its violations of the CWA pursuant to 33 U.S.C. §§ 1319(d), 1365, and 40 CFR §§ 19.1 - 19.4.

30.    Order COSTA MESA to pay reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

31.    For such other and further relief as the court deems just and proper.


DATED: September 4, 2020            LAW OFFICE OF JACK SILVER


                                    By: _____
                                        Jack Silver
                                        Attorney for Plaintiff
                                        CALIFORNIA RIVER WATCH


DATED: September 4, 2020            LAW OFFICE OF DAVID WEINSOFF


                                    By: _____
                                        David J. Weinsoff
                                        Attorney for Plaintiff
                                        CALIFORNIA RIVER WATCH

Complaint