# EXHIBIT A

# Law Office of Jack Silver

708 Gravenstein Hwy North, Suite 407   Sebastopol, CA 95472-2808
Phone 707-528-8175   Email JSilverEnvironmental@gmail.com



*Via Certified Mail –*
*Return Receipt Requested*

May 6, 2020

Scott C. Carroll, General Manager
Head of Agency
Costa Mesa Sanitary District
290 Paularino Avenue
Costa Mesa, CA 92626

Board of Directors
Costa Mesa Sanitary District
290 Paularino Avenue
Costa Mesa, CA 92626

**Re:   Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Mr. Carroll, Head of Agency and Members of the Board:

**STATUTORY NOTICE**

This Notice is provided on behalf of California River Watch ("River Watch") with regard to violations of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251 *et seq.*, that River Watch alleges are occurring through the ownership and operation of Costa Mesa Sanitary District's sewage collection system.

River Watch hereby places Costa Mesa Sanitary District ("District") as owner and operator of its sewage collection system on notice, that following the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled under CWA § 505(a), 33 U.S.C. § 1365(a), to bring suit in the U.S. District Court against the District for continuing violations of an effluent standard or limitation pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), and the Regional Water Quality Control Board, Santa Ana Region, Water Quality Control Plan ("Basin Plan") as the result of alleged unlawful discharges of sewage from the District's sewer pipelines to the Paularino Channel, Newport Beach, Upper Newport Bay and the Pacific Ocean - all waters of the United States.

Notice of Violations Under CWA – Page 1

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, which has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA. River Watch contends the District violates the CWA by discharging pollutants from a point source to a water of the United States without complying with CWA §§ 301(a) and 505(a)(1)(A), 33 U.S.C. §§ 1311(a), 1365(a)(1)(A).

The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the Environmental Protection Agency ("EPA") to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board ("SWRCB") and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating the District's operations in the region at issue in this Notice is the Regional Water Quality Control Board, Santa Ana Region ("RWQCB").

While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of the statute's permitting requirements relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365). River Watch is exercising such citizen enforcement to enforce compliance by the District with the CWA.

## NOTICE REQUIREMENTS

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

**1.     The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

River Watch has identified discharges of sewage from the District's sewage collection system to waters of the United States, without an NPDES permit, in violation of CWA § 301(a), 33 U.S.C. § 1311(a), which states in part: "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be

unlawful."

2. **The Activity Alleged to Constitute a Violation**

River Watch contends that from May 1, 2015 to May 1, 2020, the District has violated the Act as described in this Notice. River Watch contends these violations are continuing or have the likelihood of occurring in the future.

A. <u>Sanitary Sewer Overflows, Inadequate Reporting, and Failure to Mitigate Impacts</u>

   i. <u>Collection System Surface Discharges Caused by Sanitary Sewer Overflows</u>

Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above-ground from the sewage collection system, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports, and on the dates when no reports were filed by the District, all in violation of the CWA.

The District's aging sewage collection system has historically experienced high inflow and infiltration ("I/I") during wet weather. Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains connected to adjacent surface waters including the Paularino Channel, Newport Beach, Upper Newport Bay and the Pacific Ocean.

A review of the CIWQS Spill Public Report - Summary Page identifies the "Total Number of SSO locations" as **57** with **144,600** "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, the District admits at least **98,500** gallons, or **68%** of the total, reached a surface water. This discharge poses both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

<u>Examples</u> of the alleged violations included in the list of CIWQS-reported SSOs are:

- September 6, 2019 (Event ID# 861082), a spill of 1,500 gallons caused by "debris-rags" occurred at "1555 Mesa Verde Drive East at Golf Course Drive." Of the total amount, 100 gallons were recovered and 1,400 gallons reached a surface water which according to the District is "NA."

- August 6, 2019 (Event ID# 860348), a spill of 769 gallons occurred at "1090 S. Bristol Street, Costa Mesa, in front of Caltrans Maintenance yard" due to debris

from a broken sewer lateral. Of the total volume, only 499 gallons were recovered, allowing 270 gallons to enter Upper Newport Bay.

- December 13-16, 2016 (Event ID# 850174), a sewage spill caused by an "Air Relief Valve (ARV)/Blow-Off Valve (BOV) Failure" occurred at the "Elden Force Main Air Release Line." (Coordinates: 336652457 -117.8942558). The total spill volume was estimated at 25,639 gallons. Of this amount, both the amount recovered and the amount reaching land was reported as 18,000 gallons. Of the total amount, 7,639 gallons were reported as having reached Newport Beach via Upper Newport Bay.

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

    ii.    <u>Inadequate Reporting of Discharges</u>

        a.  <u>Incomplete and Inaccurate SSO Reporting</u>

Full and complete reporting of SSOs is essential to gauging their impact upon public health and the environment. The District's SSO Reports, which should reveal critical details about each of these SSOs, lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, River Watch's expert believes many of the SSOs reported by the District as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. River Watch's expert also believes that a careful reading of the time when the SSO began, the time the District received notification of the SSO, the time of its response, and the time at which the SSO ended, too often appear as unlikely estimations.

<u>Examples</u> of the alleged violations included in the list of CIWQS-reported SSOs are:

- September 17-18, 2019 (Event ID #861343) – the spill start time is reported as 9:30 pm and the agency notification time just 8 minutes later at 9:38 pm. The operator arrival time is reported as 10:55 pm, and the spill end time is reported as the following day at 12:40 pm. The estimated total volume of spill is reported as 2,250 gallons, 500 gallons of which is reported as having been recovered and 1,750 reaching the Paularino Flood Control Channel.

- September 05, 2019 (Event ID #861063) – the spill start time, agency notification, operator arrival, and spill end time are all reported as occurring within 15 minutes of each other. The estimated spill start time is reported to have begun at 2:00 pm,

the agency notification at 2:15pm and the operator arrival at 2:45pm. The estimated total volume of spill is 80 gallons, 67 gallons of which are reported as having reached a surface water, identified by the District as "NA."

- December 13, 2018 (Event ID #854962) – the estimated spill start time is reported as 11:00 am, agency notification time as 11:55 am, operator arrival time as 12:22 pm, and the spill end time as 12:50 pm. The total estimated volume of the spill was reported as 2,750 gallons. The District reports all 2,750 gallons as both being recovered and having reached land.

Given the unlikely accuracy of the times and intervals provided in these reports, it is difficult to consider the stated volumes as accurate. Without correctly reporting the spill start and end time, there is a danger that the duration and volume of a spill will be underestimated.

### b. Failure to Warn

River Watch contends the District is understating the significance of the impacts of its CWA violations by failing to post health warning signs for numerous discharges reaching a surface water. For example, for Event ID# 861063, 861082, and 861343, the District's response to question "35 - Visual inspection results from impacted receiving water," is "no impact" or "could not identify the wastewater.

### iii. Failure to Mitigate Impacts

River Watch contends the District fails to adequately mitigate the impacts of its SSOs. The District is subject to the requirements of the *Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements* Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR requires the District to take all feasible steps and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions including intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the sewage collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and the impact of the release. As the District is underestimating SSOs which reach surface waters, River Watch contends the District is not conducting sampling on most SSOs.

The EPA's *"Report to Congress on the Impacts of and Control of CSOs and SSOs"* (EPA, Office of Water (2004)) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. There is no record of the District performing any analysis of the impact of SSOs on aquatic or wildlife habitat, nor any evaluation of the measures needed to restore water bodies designated as habitat from the impacts of SSOs.

B.   <u>Collection System Subsurface Discharges Caused by Underground Exfiltration</u>

It is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a collection system result in discharges to adjacent surface waters via underground hydrological connections. River Watch contends untreated sewage is discharged from cracks, displaced joints eroded segments, etc., in the District's sewage collection system into groundwater hydrologically connected to surface waters including, but not limited to, the Paularino Channel, Newport Beach, Upper Newport Bay and the Pacific Ocean. Surface waters then become contaminated with pollutants including human pathogens. Chronic failures in the sewage collection system pose a substantial threat to public health.

Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other collection systems have verified the contamination of the adjacent waters with untreated sewage.

Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found from the District's sewage collection system which reaches a surface water is a discharge of a pollutant to a surface water without an NPDES permit, and therefore a violation of the CWA.

C.   <u>Impacts to Beneficial Uses</u>

The Upper Newport Bay and the Pacific Ocean have many beneficial uses as defined in the RWQCB's Basin Plan. SSOs reaching these waters or their tributaries cause prohibited pollution by unreasonably affecting these beneficial uses.

**Upper Newport Bay**

Newport Bay is located on the southern coast of California, approximately 40 miles south of Los Angeles, extending approximately 3.5 miles north-northeast from the harbor entrance at Corona del Mar. Newport Bay is a combination of 2 distinct units, termed "Lower Bay" and "Upper Newport Bay," divided by the narrows at Pacific Coast Highway Bridge. The 752-acre Lower Bay, where the majority of commerce and recreational boating exists, is heavily developed and is a deep-basin coastal lagoon. The 1,000-acre

Upper Newport Bay is a drowned river valley, geologically much older than the Lower Bay, largely undeveloped, and more formally considered to be an estuary. Much of Upper Newport Bay is included in the Upper Newport Bay Ecological Reserve.

Upper Newport Bay is one of the largest coastal wetlands remaining in southern California. Natural habitats within it include open marine waters, intertidal mudflats, cordgrass-dominated low salt marsh, pickleweed-dominated mid salt marsh, high salt marsh, salt panne, riparian, freshwater marsh and upland. Because of its diversity of habitats and location on the Pacific Flyway, Upper Newport Bay supports an impressive number and diversity of birds, particularly during fall and winter when shorebirds and waterfowl arrive from their northern breeding grounds. Upper Newport Bay also supports several endangered bird species including the Light-Footed Clapper Rail, Brown Pelican, Belding's Savannah Sparrow, Black Rail, Peregrine Falcon and California Least Tern, as well as one endangered plant species - Saltmarsh Bird's Beak. The subtidal and intertidal waters provide important habitat for marine and estuarine fishes.

River Watch is extremely concerned regarding the effects of surface, underground, and unreported SSOs on critical habitat in and around the diverse and sensitive ecosystems of Upper Newport Bay and the Pacific Ocean, including risks to the health of those who recreate in, and consume fish from, those ecosystems.

**3.    The Person or Persons Responsible for the Alleged Violation**

The entity responsible for the alleged violations identified in this Notice is Costa Mesa Sanitary District and those of its employees responsible for compliance with the CWA and with any applicable state and federal regulations and permits.

**4.    The Location of the Alleged Violation**

The location or locations of the various violations alleged in this Notice are identified in records created and/or maintained by or for the District which relate to its sewage collection system as further described in this Notice.

The District is a special district formed in 1944 and governed by an independent 5-member Board of Directors elected at large by the residents. The District provides wastewater service and solid waste collection. The District's boundaries include the entire City of Costa Mesa and portions of the City of Newport Beach and the unincorporated territory of the County of Orange.

The District serves a residential population of approximately 116,700 as well as various public, commercial, industrial and retail land uses. The District's facilities include 219.4 miles of gravity mainline, 4.8 miles of pressurized mainline, 108.8 miles of private property sewer lateral pipelines, 24,870 service lateral connections, 4,707 manholes and

20 pumping stations.

## 5. The Date or Dates of Violations or a Reasonable Range of Dates During Which the Alleged Activity Occurred

The range of dates covered by this Notice is May 1, 2015 through May 1, 2020. River Watch may from time to time update this Notice to include violations of the CWA by the District which occur during and after the range of dates currently covered. Some violations are continuous, and therefore each day constitutes a violation.

## 6. The Full Name, Address, and Telephone Number of the Person Giving Notice

The entity giving notice is California River Watch, referred to throughout this notice as "River Watch," an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation duly organized under the laws of the State of California. Its mailing address is 209 South Main St. #817, Sebastopol, California, 95472. River Watch is dedicated to protecting, enhancing, and helping to restore surface waters and ground water of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

River Watch may be contacted via email: US@ncriverwatch.org, or through its attorneys. River Watch has retained legal counsel with respect to the issues raised in this Notice. All communications with respect to this Notice should be directed to the counsel identified below:

| | |
|---|---|
| Jack Silver, Esq. | David J. Weinsoff, Esq. |
| Law Office of Jack Silver | Law Office of David Weinsoff |
| 708 Gravenstein Hwy. No. # 407 | 138 Ridgeway Avenue |
| Sebastopol, CA 95472 | Fairfax, CA 94930 |
| Tel. (707) 528-8175 | Tel. (415) 460-9760 |
| Email: jsilverenvironmental@gmail.com | Email: david@weinsofflaw.com |

## RECOMMENDED REMEDIAL MEASURES

River Watch looks forward to meeting with the District staff to tailor remedial measures to the specific operation of the sewage collection system.

## CONCLUSION

The violations set forth in this Notice affect the health and enjoyment of members of River Watch who may reside and recreate in the affected community and may use the affected watershed for recreation, fishing, horseback riding, hiking, photography, or nature

Notice of Violations Under CWA – Page 8

walks. Their health, use and enjoyment of this natural resource is specifically impaired by the District's alleged violations of the CWA as set forth in this Notice.

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including a governmental instrumentality or agency, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 33 U.S.C. § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $54,883.00 ($55,800.00 on or after January 13, 2020) per day/per violation pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 CFR §§ 19.1 – 19.4. River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of the CWA to obtain the relief provided for under the law.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes. River Watch encourages the District to contact counsel for River Watch within **20 days** after receipt of this Notice to initiate a discussion regarding the allegations detailed herein. In the absence of productive discussions to resolve this dispute, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

Very truly yours,

Jack Silver

JS

## Service List

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N. W.
Mail Code 1101A
Washington, D.C. 20460

John Busterud, Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
Mail Code ORA-1
San Francisco, CA 94105

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100